**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **WARREN KNOWLTON, et al.,** | CASE NO. 3:20 CV 2292 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **PILKINGTON HOLDINGS, INC., et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

Plaintiffs Warren and Judy Knowlton claim Defendants Pilkington Holdings, Inc and Pilkington North America, Inc. breached a promise to cover Plaintiffs full dental expenses for life. The present dispute is where the merits of that claim should be litigated. Plaintiffs want to litigate in state court (they filed the case there). Defendants want to litigate in federal court (they removed it here). Thus, currently pending before the Court is Plaintiffs' Motion to Remand (Doc. 10), to which Defendants filed an opposition (Doc. 12), and Plaintiffs replied (Doc. 13). For the reasons discussed below, the Court GRANTS Plaintiffs' motion.

### BACKGROUND

Plaintiff Mr. Knowlton worked for Pilkington as an executive until 2002. (Complaint, at ¶¶ 2, 24).[1] While employed, he was covered by a 1997 Service Agreement, which provided for continued health care coverage for him and his wife after his departure from the company, and a subsequent 1999 Service Agreement providing the same. *Id.* at ¶¶ 14-23.

---

1. Plaintiffs' Complaint is located at Doc. 1-2, pages 2-12.

Mr. Knowlton departed in 2002 and signed a separation agreement providing, *inter alia*, that Pilkington and any successor company would provide Mr. Knowlton the healthcare benefits set forth in the 1999 service agreement. *Id.* at ¶¶ 24-26.

Sometime in 2003, Pilkington eliminated its retiree dental benefits plan. *Id.* at ¶ 27. Mr. Knowlton communicated with Pilkington representatives thereafter about his right to future benefits. *Id.* at ¶ 29. On October 17, 2003, Alan R. Graham, Country Manager, North America, General Counsel, and Secretary, wrote Mr. Knowlton a letter stating, *inter alia*, "the Company will continue to pay invoices for dental services for you and Judy as we receive them from you." (Doc. 1-2, at 98). The Complaint calls this the "October 2003 Agreement"; Plaintiff says the agreement "did not adopt any terms from the dental plan that Pilkington eliminated", "did not contain any limitations on the types of dental services that Pilkington agreed to pay for the Knowltons", and "did not state any dollar limit on the amount of dental services that Pilkington agreed to pay for the Knowltons." (Complaint, at ¶¶ 35-37). For sixteen years thereafter, Plaintiffs "submitted their invoices for dental services to Pilkington, and Pilkington fully paid those invoices without limitation, despite the elimination of its dental plan for retirees." *Id.* at ¶ 41.

In November 2019, Pilkington refused to pay Plaintiffs' submitted dental invoices. *Id.* at ¶ 44. This suit – asserting breach of contract and promissory estoppel, and seeking declaratory judgment – followed in September 2020 in the Lucas Count Court of Common Pleas. *See generally* Doc. 1-2.

On October 9, 2020, Defendants removed the case to this Court. (Doc. 1). Plaintiffs then filed the pending Motion to Remand (Doc. 10), to which Defendants filed an Opposition (Doc. 12), and Plaintiffs filed a Reply (Doc. 13).

2

**STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. To remove a case to federal court, the removing party must prove the federal court has original jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over cases that "aris[e] under" federal law, 28 U.S.C. § 1331; therefore, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties", 28 U.S.C. § 1441(b).

To determine whether a case arises under federal law, a court looks to the face of the plaintiff's "well-pleaded complaint." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "After all, the general rule says the plaintiff is the master of her complaint and gets to choose where and how to sue." *K.B. ex rel. Qassis v. Methodist Healthcare-Memphis Hospitals*, 929 F.3d 795, 799 (6th Cir. 2019) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). Therefore, "under the ordinary test for federal jurisdiction", a complaint based only on state law "stays where it started—in state court." *Id.*

"But the ordinary rule is not without exceptions." *Id.* Congress can expand federal jurisdiction and "does just that when it passes a statute so broad that it 'wholly displaces . . . state-law cause[s] of action through complete pre-emption.'" *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). In such cases, the state law claims are said to be "in reality based on federal law"; they are thus removable to federal court even if the plaintiff chose to plead state law claims in state court. *Beneficial Nat'l Bank*, 539 U.S. at 8.

The Employee Retirement Income Security Act (ERISA) is one such exception. *Davila*, 542 U.S. at 207-08. ERISA is a federal statute that sets up a regulatory regime to protect participants in employee benefit plans. 29 U.S.C. § 1001(b). The "comprehensive civil

3

enforcement scheme" in ERISA, 29 U.S.C. § 1132, "carefully" sets forth who can sue, when they can sue, and what remedies they have. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53-54 (1987). Plan participants and beneficiaries are able "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has recognized this carefully-crafted scheme "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life*, 481 U.S. at 54. Thus, the purpose of ERISA preemption is to guarantee all claims based on ERISA are brought where and how Congress specified in the ERISA statute; otherwise, plaintiffs could seek different remedies than those Congress identified. *Davila*, 542 U.S. at 214 n.4 ("A state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive.").

There are two forms of ERISA preemption: "express preemption (which applies broadly) and complete preemption (which applies narrowly)." *K.B.*, 929 F.3d at 800. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan". 29 U.S.C. § 1144(a). "But simply because a state law claim might fall within § 1144(a)'s broad preemptive reach does not *alone* suffice to take it outside the normal rule that a federal preemption defense does not make a case with state law claims removable to federal court under §§ 1331 and 1441(a))." *K.B.*, 929 F.3d at 800 (citing *Gardner*, 715 F.3d at 612). Thus, while express preemption may be a defense to a state-law claim, it is not a basis for removal. *See, e.g.*, *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 614 (6th Cir. 2001).

4

Instead, to make a case removable, the case must implicate the "complete preemption" doctrine. Under this doctrine, a state suit may be completely preempted (and therefore subject to removal) "if it asserts a state law cause of action to enforce the terms of an ERISA plan and that suit conflicts with or duplicates the federal cause of action provided in ERISA's enforcement provision, 29 U.S.C. § 1132(a)(1)(B)." *K.B.*, 929 F.3d at 800 (citing *Davila*, 542 U.S. at 214 n.4). Therefore, ERISA completely preempts a state law claim when such claim "'duplicates, supplements, or supplants the ERISA civil enforcement remedy' in § 1132(a)(1)(B), even if the state law claim makes no reference to or has no explicit connection with ERISA." *Id.* (quoting *Davila*, 542 U.S. at 209).

The Court applies a two-part test to determine whether ERISA completely preempts a state law claim (and thus makes a case removable). *Davila*, 542 U.S. at 210. The removing party must show both parts are met. *K.B.*, 929 F.3d at 800. First, the plaintiff must be complaining about a denial of benefits under the terms of an ERISA plan. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013). Second, the plaintiff must allege the violation of a legal duty (federal or state) that is exclusively *dependent* on ERISA or on the ERISA plan's terms. *Id.* "[N]o other independent legal duty [may be] implicated by a defendant's actions." *Davila*, 542 U.S. at 210. A state law claim that satisfies both requirements is "in essence" a claim "for the recovery of an ERISA plan benefit" and thus is subject to ERISA's enforcement scheme in federal court. *Hogan v. Jacobson*, 823 F.3d 872, 880 (6th Cir. 2016) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002)).

Finally, the Court notes removal statutes are to be strictly construed against the party seeking removal. This strict construction is necessary because removal jurisdiction encroaches on a state court's jurisdiction; thus "in the interest of comity and federalism, federal jurisdiction

5

should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999). The court must resolve all doubts regarding propriety of removal in favor of the non-removing party. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

## DISCUSSION

According to Defendants, Plaintiffs' motion to remand should be denied because ERISA completely preempts Plaintiffs' claims and this case belongs in federal court. Plaintiffs dispute this and ask the Court to remand this case back to the Lucas County Court of Common Pleas, asserting Defendants have not satisfied their burden of establishing federal jurisdiction. They further ask the Court to award attorneys' fees and costs for the allegedly-improper removal. For the reasons discussed below, the Court grants Plaintiffs' motion to remand, but denies the related request for attorneys' fees.

<u>Notice of Removal</u>

Preliminarily, Plaintiffs contend Defendants' Notice of Removal fails to establish there is a dispute over an ERISA-regulated plan here.

Defendants' Notice of Removal asserted:

> Removal of this action is proper under federal question jurisdiction. 28 U.S.C. § 1331. Plaintiffs' claims involve and relate to Service Agreements entered into by Pilkington Holdings Inc and Plaintiff Warren Knowlton in 1997 and 1999. More specifically, Plaintiffs' claims concern provisions of those Agreements relating to "Executive's Benefits" and concerning "health care coverage…under the health care plan." [*See* State Court Complaint, ¶ 15]. Indeed, Plaintiffs allege that "Pilkington was required to provide, at its own expense, to Warren and Judy Knowlton, the benefits provided to similarly-situated executives as of June 25, 1997. And these benefits, per the contract, were to last until the end of both Warren Knowlton and Judy Knowlton's lifetimes." [*Id.* at ¶ 26]. Plaintiffs' claims further relate to an alleged 2003 agreement between Pilkington North America, Inc. and Mr. Knowlton concerning the payment of dental services. [*Id.* at ¶ 30].

6

> Plaintiffs seek dental reimbursement benefits under the agreement(s) between Mr. Knowlton and Defendants. [*See generally id.*]. The arrangement(s) relating to the welfare benefits covered by the agreements upon which Plaintiffs rely and bring this lawsuit are employee welfare benefit plans under the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1002 ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness . . . .").

(Doc. 1, at 1-2). In their motion to remand, Plaintiffs argue Defendants misconstrued their claims. (Doc. 10). They contend Defendants failed to show there is an ERISA plan in place, or that Plaintiffs' state law claims allege a breach of an ERISA plan. (Doc. 10, at 3). In opposition, Defendants assert that "when the 2003 retiree dental plan was terminated, Defendants established a new plan applicable solely to Plaintiffs (the "Plan")." (Doc. 12, at 1).

The Court agrees with Plaintiffs that Defendants' opposition argument appears somewhat different than that presented in the initial Notice. The Notice of Removal referred to the 2003 letter as "an alleged 2003 agreement", not an ERISA plan in and of itself. (Doc. 1, at 1-2). As another Court in this district has explained, "[a] defendant cannot argue a new substantive basis for removal in opposing remand." *Hahn v. Rauch*, 602 F. Supp. 2d 895, 909 (N.D. Ohio); *see also Uppal v. Elec. Data Sys.*, 316 F. Supp. 2d 531, 535 (E.D. Mich.) (collecting cases for the proposition that new grounds for removal may not be asserted after the thirty-day time period for removal in 28 U.S.C. § 1446).

However, the Notice also stated more broadly that "[t]he arrangement(s) relating to the welfare benefits covered by the agreements upon which Plaintiffs rely and bring this lawsuit are employee welfare benefit plans under the Employee Retirement Income Security Act ("ERISA").". (Doc. 1, at 2). The Court therefore declines Plaintiffs' invitation to remand solely

7

on this basis, but instead addresses Defendants' additional arguments below before concluding remand is required.

ERISA Complete Preemption

As set forth above, *Davila*'s two-prong test dictates whether a claim is completely preempted by ERISA. "By its plain terms, '[t]he two-prong[ed] test of *Davila* is in the conjunctive. A state-law cause of action is preempted by § [1332])(a)(1)(B) only if both prongs of the test are satisfied.'" *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009)). The Court's inquiry is a "case-specific one that requires examination of the complaint and its alleged facts, the state law on which the claims are based, and various plan documents." *Milby v. MCMC LLC*, 844 F.3d 605, 611–12 (6th Cir. 2016).

First, the plaintiff must be complaining about a denial of benefits under the terms of an ERISA plan. *Gardner*, 715 F.3d at 613. Under ERISA, an employee welfare benefit plan is defined as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

To determine whether a claim meets the first *Davila* prong, the Court must examine the Complaint and decide whether, "the plaintiff complains about the denial of benefits to which he is entitled," *Garner*, 715 F.3d at 613, "only because of the terms of an ERISA-regulated

8

employee benefit plan," *Davila*, 542 U.S. at 210. The dispute must be about an ERISA plan for complete preemption to apply, and a case to be removable.

The parties disagree about whether the instant case involves an ERISA-regulated plan. Central to this dispute is the meaning of the October 17, 2003 letter. It reads, in its entirety:

> This will confirm your recent discussions with David and myself concerning the level of post-retirement health care that you and Judy are entitled to pursuant to your Separation Agreement (as that term is defined to include any associated documents that survived the Separation Agreement).
>
> Since David and I were not involved in your 1997 or 1998 Service Agreements, we must interpret their intent from the "four corners" of the agreements as well as from the file documents associated therewith (i.e., what, in another context, would be referred to as "the legislative history"). Having gone through that analysis, David and I agree that the most reasonable interpretation to be taken from the various agreements and related "legislative history" is that you and Judy are entitled to, and will receive from the Company, medical, prescription, and dental health care coverage. Of course, that coverage is subject to any conditions set forth in those documents [the earlier Service Agreements] (e.g., that you enroll in U.S. Medicare Part A and Part B at age 65). As we have discussed, it is not possible to enroll you in the dental program for "active" employees and the dental program for retirees has been eliminated. In lieu of that, the Company will continue to pay invoices for dental services for you and Judy as we receive them from you.
>
> I trust that you are in agreement with the foregoing. If you have any questions or comments, or if you disagree with any of the foregoing, please contact me. Otherwise, we will assume you are in full agreement with this letter.

(Doc. 1-2, at 98).

The Sixth Circuit requires a "three-step factual inquiry" to determine if something is an ERISA plan. First (and not at issue here), "the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA." *Thompson v. Am. Home. Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). "Second, the court must look to see if there was a "plan" by inquiring whether from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class

of beneficiaries, the source of financing, and procedures for receiving benefits. *Id.* at 434-35 (internal quotation and citation omitted). "Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees." *Id.* at 435.

Defendants assert this test is satisfied here – based on their interpretation of what the letter provides. According to Defendants, the letter demonstrates the creation of a new ERISA plan solely for Plaintiff and his wife, focusing on the language "coverage is subject to any conditions set forth in those documents." (Doc. 1-2, at 98). They say, *inter alia*:

> [T]he benefits were health benefits, they were to be provided to a certain group of identifiable participants/beneficiaries (Plaintiffs), the specific benefits to be provided are identifiable (payment of invoices for dental services equivalent to the same benefits as were provided under the prior, discontinued plan), and to provide the benefits, Pilkington was required to take ongoing administrative actions, including receipt and review of claims for benefits and payment and/or non-payment under the terms of the Plan (which through reference to the prior agreements, incorporates the terms and conditions of the previous plan).

(Doc. 12, at 6). They further assert the source of financing is clear (Pilkington's general revenues), and "through their own allegations [payments for 16 years], Plaintiffs concede that Pilkington established and maintained the plan with the intent of providing benefits to Plaintiffs." *Id.* at 6-7. They thus assert Plaintiffs' state law breach of contract and promissory estoppel claims are, in essence, claims to enforce benefits under that new ERISA plan, which meets the statutory definition of a "plan".

Plaintiffs, on the other hand, characterize the letter as a settlement agreement that provided for benefits on *different* terms than the prior ERISA plan, and not under any ERISA-regulated plan, but on an independent basis. As Plaintiffs read it, the letter recognizes the prior coverage and its "conditions", but then says "[i]n lieu of that", Pilkington would pay invoices. (Doc. 1-2, at 98). This "in lieu of" language, according to Plaintiffs, suggests a new, independent

10

obligation, one only entered into for purposes of settling a claim Plaintiffs otherwise might have had under the separation agreement. As pled in the Complaint, the letter "did not adopt any terms from the dental plan that Pilkington eliminated", "did not contain any limitations on the types of dental services that Pilkington agreed to pay for the Knowltons", and "did not state any dollar limit on the amount of dental services that Pilkington agreed to pay for the Knowltons." (Complaint, at ¶¶ 35-37). Moreover, the Complaint alleges that for sixteen years thereafter, Plaintiffs "submitted their invoices for dental services to Pilkington, and Pilkington fully paid those invoices without limitation, despite the elimination of its dental plan for retirees." *Id.* at ¶ 41. That is, as Plaintiffs read the letter, Pilkington agreed to simply pay *any* dental claims incurred, without limitation. They cite cases finding settlement agreements or other contracts are not ERISA plans, and assert that there is no need to interpret any ERISA plan to resolve their claims.

The Court finds either interpretation of the letter could be reasonable. Defendants read the letter to incorporate the terms (and limitations) of the prior agreements; but – given the above disagreement and two ways to read the letter – the Court cannot say "a reasonable person [could] ascertain the intended benefits" of the alleged "plan" Defendants claim to identify for purposes of removal. Moreover, if Plaintiffs' reading is correct, the agreement is not clearly an ERISA plan because – under that reading – the agreement simply provided Pilkington would pay whatever invoices Plaintiffs sent. "The hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation.'" *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 517 (6th Cir. 1995) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)). "'Simple or mechanical determinations do not necessarily require the establishment of such a scheme; rather an employer's need to create an administrative system may arise where

11

the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.'" *Id.* (quoting *Sherrod v. Gen. Motors Corp.*, 33 F.3d 636, 638 (6th Cir. 1994) (citation omitted)).

ERISA preemption "was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities" and "[a] patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Fort Halifax Packing Co.*, 482 U.S. at 11. Preemption thus "ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.*

> This concern only arises, however, with respect to benefits whose provision by nature require an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans*, rather than simply to *benefits*. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

*Id.* at 11-12 (emphasis in original). Here, if Plaintiffs' reading is correct, Pilkington was required to do no more than write checks to cover Plaintiffs' dental bills. This would be a benefit, but not a benefit *plan*. *See, e.g.*, *Hill v. Fort Loudoun Elec. Co-op.*, 782 F. Supp. 2d 587, 592 (E.D. Tenn. 2011) ("[Defendant]'s 'unwritten practice' of covering health insurance premiums is a benefit, but it is not a benefit plan under ERISA because the employer exercises insufficient discretion in the distribution of benefits.").

Under these circumstances – where the letter can be read two ways – the Court cannot find Defendants have satisfied their burden to prove this dispute involves an ERISA "plan" for purposes of complete preemption and thus removal. The duty to be determined – at least at this

juncture – arises from how one interprets the October 2003 letter. *See, e.g.*, *Fillmore v. Brush Wellman, Inc.*, 243 F. Supp. 2d 758, 762 (N.D. Ohio 2003) (Katz, J.) ("The rights sought to be enforced by Plaintiffs do not directly originate with the [benefit plan] . . . . Instead, Plaintiffs seek to enforce the terms of the settlement agreement . . . whether the settlement agreement requires Defendant to offer continued employment to Plaintiffs or whether Plaintiffs instead can avail themselves of this alternative only as set forth in the [benefit plan], is a matter of interpretation of the settlement agreement language, not of the [benefit] plan."); *see also Ho v. Motorola, Inc.*, 2008 WL 4534031, at *3 (N.D. Ill.) (holding, where an agreement could be interpreted two ways, and under one interpretation, ERISA did not preempt the claims, remand was required); *Crase v. Shasta Beverages, Inc.*, 2011 WL 94615, at *4 (S.D. Ohio) ("Here, is it is simply not clear from the allegations in the complaint whether or not plaintiff is attempting to vindicate his rights under section 1140 or whether, as plaintiff maintains, he is simply including a loss of benefits under an ERISA-based plan as part of his damages. As a result, defendants have failed to meet their burden of showing that plaintiff's claim is preempted by ERISA.").

It is certainly true this case seemingly only exists because there was an ERISA benefit plan at one point. But the Sixth Circuit has rejected a "but-for" test for preemption. *See Milby v. MCMC LLC*, 844 F.3d 605, 611-12 (6th Cir. 2016). The Sixth Circuit explained that asking "whether an ERISA plan is the 'but for' cause of relationship between the parties . . . would capture too many claims that courts have found to be based on independent duties." *Id.* at 611. Rather, "[t]he inquiry is . . . a case specific one". *Id.* Having undertaken that case-specific analysis above, and mindful that removal statutes are strictly construed, *Brierly*, 184 F.3d at 534; *Coyne*, 183 F.3d at 493, the Court finds it is not clear from the face of the Complaint whether Plaintiffs' claims are completely preempted by ERISA. To be clear, the Court does not hold that

13

Plaintiffs' interpretation of the agreement is the correct one, only that under such an interpretation, federal jurisdiction is not established and this action must therefore be remanded.[2]

Attorneys' Fees

Plaintiffs also assert entitlement to attorneys' fees and costs associated with its motion to remand. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Conversely, when an objectively reasonable basis exists, fees should be denied."). The non-removing party has the burden to "establish that the . . . removal attempt was not objectively reasonable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008).

Plaintiffs argue the removal notice was objectively unreasonable because it misconstrued their claims and "rested on an obvious misinterpretation of the facts alleged" in the Complaint. (Doc. 10, at 11). They also accuse Defendants of "an obvious attempt to forum-shop and obtain

---

2. In a footnote, Defendants assert that even if the Court "were to question the existence of an ERISA plan, jurisdiction still exists." (Doc. 12, at 9 n.2). However, the cases cited therein are largely cases where a plaintiff brought a claim originally in federal court – based expressly on ERISA. They hold that the existence of an ERISA plan, in those circumstances, is a substantive element of an ERISA-based claim, not a prerequisite for jurisdiction. *See, e.g., Daft v. Advest, Inc.*, 658 F.3d 583, 593 (6th Cir. 2011); *Morris v. Appalachain Reg'l Healthcare, Inc,* 2013 WL 1856231, at *5 (E.D. Ky.). This is not the case presented here where Plaintiffs do not explicitly assert claims under ERISA and did not initially invoke this Court's jurisdiction. Further, the case Defendant cites for the proposition that remand may be denied because "[i]n determining whether federal-question jurisdiction exists, the Court need not determine whether the plan is governed by ERISA", *Burgett v. Appalachian Reg'l Healthcare, Inc.*, 2014 WL 2441235, at *1 (E.D. Ky.), *also* involved statutory ERISA-based claims expressly asserted *by the plaintiff* in the state court pleading. *See Burgett*, 2014 WL 2441235, at *2 ("Here, the plaintiff has explicitly asserted claims under various provisions of ERISA. It does not matter whether those claims are asserted in the alternative. The federal claims are asserted. Accordingly, federal-question jurisdiction exists and this action was properly removed."). Again, this is not the circumstance presented by the instant case. The asserted basis for this Court's jurisdiction is removal based on complete preemption under ERISA of claims stated as purely state law claims. For the reasons set forth above, lacking a clearly-identifiable ERISA plan at issue, removal is improper. The cited cases are inapposite.

favorable a procedural posture under the ERISA rules". *Id.* Defendants respond that their arguments in support of removal demonstrate "at a minimum an objectively reasonable basis to seek removal." (Doc. 12, at 12). Given the interpretation complexity discussed above, and the legal complexity of complete preemption under ERISA, the Court finds Plaintiffs have not shown Defendants lacked an objectively reasonable basis for removal. Therefore, the request for fees and costs is denied.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiffs' Motion to Remand (Doc. 10), be and the same hereby is, GRANTED, and this case is REMANDED to the Lucas County Court of Common Pleas, and it is

FURTHER ORDERED that Plaintiffs' request for attorneys' fees and costs, be and the same hereby is DENIED.

      s/ *James R. Knepp II*
      UNITED STATES DISTRICT JUDGE